## In Re: Security of America Life Insurance Company, Appellant *v.* Commonwealth of Pennsylvania, Insurance Department.

Argued February 3, 1977, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Walter L. Foulke*, with him *Drinker, Biddle & Reath*, for appellant.

*John H. Isom*, Assistant Attorney General, with him *Guy J. DePasquale*, Assistant Attorney General, and *Robert P. Kane*, Attorney General, for appellee.

OPINION BY JUDGE ROGERS, April 19, 1977:

Security of America Life Insurance Company (Security) is engaged in Pennsylvania in the business of writing Group Credit Life Insurance and Group Credit Accident and Health Insurance. Security issues its policies to lending institutions which in turn offer to their debtors the option to have life and total disability insurance under the lending institution's policy—life in the amount of their debt and disability in the amount of their periodic payments due. In the event of death or total disability, the proceeds of certificates issued to debtors under the group policy are paid to the lending institution to discharge the debts

or, in the case of disability. the monthly payments due, with any excess being paid to the debtors or their beneficiaries. The premiums on certificates of insurance issued by Security are paid in full at the time the certificates are applied for and are often financed by the lending institutions.

Security's forms for certificates delivered to debtors have provided that the maximum age for eligibility for insurance is 65, and that, if the age of the debtor is found to have been misstated and the debtor's actual age would have made him ineligibile, Security will refuse to pay the proceeds but will refund the premiums paid and the lending institution will repay the debtor any charges it made for the insurance. The record made in the hearing conducted by the Insurance Department establishes that Security does not require its policy holder, the lending institution, to require any proof of age to be provided by the debtor when the insurance is applied for; but that when, in a death case, a claim is made Security requires submission of a death certificate which shows date of birth. If the birth date shows that the debtor misstated his age, Security denies liability on the policy and refunds premiums. Of 2100 death claims made during 1975, Security denied 20 claims because of misstatement of age.

Security's application and certificate have further provided that the aggregate maximum amount of life insurance which may be provided to an individual debtor under the group policy with respect to all indebtedness of the debtor to the creditor should be $15,000. The record is not clear as to what, if anything, Security requires the lending institutions holding its policies to do with respect to ascertaining whether a loan applicant when applying for a new debt and an insurance certificate has or has not exceeded the $15,000 maximum. If, when a death claim

is made, it is ascertained that the total amount of insurance taken out by the debtor under the group policy exceeds $15,000, Security will not pay proceeds in excess of that amount but will refund excess premiums. In practice, during the two calendar years of 1974 and 1975 there was only one instance of a debtor holding Security's certificates aggregating more than the $15,000 limit.

The provisions of Security's maximum age eligibility requirement and its practices with respect to the consequences of a misstatement have been, and it says still are, authorized by two Acts of the General Assembly. First, with respect to Group Credit Life Insurance, Security cites Section 6(5) of the Act of May 11, 1949, P.L. 1210, *as amended*, 40 P.S. §532.6(5) (hereinafter referred to as Act 367), providing:

> No policy of group life insurance shall be delivered in this State unless it contains in substance the following provisions. . . .
>
> . . . .
>
> (5) A provision specifying an equitable adjustment of premiums or of benefits or of both to be made in the event the age of a person insured has been misstated, such provision to contain a clear statement of the method of adjustment to be used.

Security finds statutory support for its maximum insurance provision and its practices with respect thereto in Section 3(4) of Act 367, 40 P.S. §532.3(4), which provides, with respect to group life insurance, the following:

> A policy issued to a creditor to insure debtors of a creditor shall be subject to the following requirements:
>
> . . . .
>
> (4) The amount of insurance on the life of any debtor shall at no time exceed the

amount owed by him which is repayable in installments to the creditor, or thirty thousand dollars ($30,000) whichever is less.

and in Section 618(B)(3), 40 P.S. §753(B)(3) of the Act of May 17, 1921, added May 25, 1951, P.L. 417, 40 P.S. §754 (Act 99), authorizing in accident and health policies:

A provision as follows:

Other Insurance in This Insurer: If an accident or sickness or accident and sickness policy or policies previously issued by the insurer to the insured be in force concurrently herewith, making the aggregate indemnity for ............ (insert type of coverage or coverages) in excess of $ ........ (insert maximum limit of indemnity or indemnities), the excess insurance shall be void and all premiums paid for such excess shall be returned to the insured or to his estate. . . .

The last statute involved is the Model Act for the Regulation of Credit Life Insurance and Credit Accident and Health Insurance, the Act of September 2, 1961, P.L. 1232, 40 P.S. §1007.1 et seq. (hereinafter called Act 540). The stated purpose of this Act is to promote the public welfare by regulating credit life and credit accident and health insurance.[1] Its scope is "[a]ll life insurance and all accident and health insurance in connection with loans or other credit transactions" and creditor is defined as the "lender of money or vendor or lessor of goods, services, property rights or privileges for which payment is arranged through a credit transaction. . . ."[2] Other sections regulate the term of policies and the provisions and practices with respect to premiums, refunds

---

[1] Section 1, 40 P.S. §1007.1.

[2] Section 2, 40 P.S. §1007.2.

and claims on policies. There is nothing in the Act with reference to the eligibility of debtors based on age or the consequence of a misstatement of age. Section 1007.4(a), 40 P.S. §1007.4(a) provides that the amount of such insurance shall not exceed the amount of the debtor's indebtedness but states no absolute maximum as does Section 3(4) of Act 367. The Act confers on the Insurance Commissioner the power to promulgate rules and regulations for the supervision of the Act,[3] and it requires the approval of the Commissioner of policies, certificates and applications.[4] The Commissioner is empowered to "disapprove any such form . . . if such form contains provisions which are unjust, unfair, inequitable, misleading, deceptive or encourage misrepresentation of the coverage or are contrary to any provision of the insurance laws or of any rule or regulation promulgated thereunder."[5]

Although, as noted, Act 540 was enacted in 1961, Security and possibly others engaged in writing credit life and credit health and accident insurance included, in policies written after 1961, provisions fixing maximum age and maximum aggregate amount requirements for eligibility. It was not until 1971 that the Insurance Commissioner was moved to adopt regulations on the subject. In that year two regulations were adopted with respect to credit health and accident insurance. They are to be found at 31 Pa. Code §73.11(3)(ii), and 31 Pa. Code §73.11(6), and read, respectively:

Any age restriction shall be used only to determine initial eligibility for coverage; it may not be used as a basis of terminating existing coverage or denying claims. This section does

---

[3] Section 12, 40 P.S. §1007.12.

[4] Section 7(a), 40 P.S. §1007.7(a).

[5] Section 7(b), 40 P.S. §1007.7(b).

not preclude the insurer from challenging a fraudulent misstatement of age during the contestable period; nor does it preclude the insurer from terminating monthly premium coverage at the end of the last month for which a premium was paid. Provided that to challenge or terminate, information regarding age is contained in a written instrument signed by the debtor and a copy of such form is given to the debtor. If a debtor exceeds the eligibility age, has correctly stated his age in writing, and a certificate is issued to him in error, the insurer has the right within 60 days from the date of the loan to terminate coverage and refund the single premium paid.

No form shall refer to an aggregate maximum for all indebtedness, all certificates, or all individual policies. A company may establish an underwriting maximum per indebtedness, per certificate, or per policy. If a maximum is established, the insurer shall clearly set forth on each form that such maximum applies to each indebtedness, certificate, or individual policy.

In November, 1975, the Insurance Commissioner adopted regulations for application to credit life insurance materially identical to those just reproduced. These are to be found at 31 Pa. Code- §73.1(2)(iii) and 31 Pa. Code §73.1(c).

This litigation commenced when, shortly before the adoption of the new regulations with respect to credit life insurance, Security filed new forms for approval by the Insurance Commissioner. These forms were disapproved by the Commissioner because of the nonconformity of Security's maximum age and maximum aggregate insurance clauses with the new regulations. Security requested and was pro-

vided a hearing and the instant appeal is from the Commissioner's predictable conclusion that the forms were not consistent with his regulations and that his regulations were the result of a proper exercise of the powers granted him by Act 540. With respect to Security's argument based on Act 367, the Insurance Commissioner says simply that Act 367 "pertaining to group life insurance does not apply in view of the subsequent passage of the more specific Model Act for the regulation of Credit Life Insurance and Credit Accident and Health Insurance . . . (Act 540). . . ." The adjudication does not mention Security's argument based on Act 99.

The record of the hearing reveals the Commissioner's reason for the contested regulations. He and his Department believe that it is unfair for the insurer to sell the insurance based on the appellant's statement of eligible age while reserving the right to deny a claim made at any time in the future because of a misstatement of age. The result of this practice, they say, is that the debtor who has misstated his age and his beneficiaries are permitted to pay for and to believe that they have insurance, whereas in fact the debtor's life is not insured—a fact of which his beneficiaries learn only when they make a claim. The Commissioner says it would be easy for the lending institution to require proof of age when insurance is applied for. With respect to the aggregate maximum insurance provision, the Commissioner believes that it is asking too much of the debtor applying for a loan to remember whether the new indebtedness will cause his aggregate obligation to be in excess of Security's maximum. Again, the Commissioner says, it is unfair to make the debtor or his beneficiaries wait until a claim is made to find out that he was not insured to the extent that he believed. Security replies to all of this that it is not unreasonable to require a debtor to

state his true age on an application, the face of which tells him that he is not eligible if he is over the age of 65, or to expect him to know how much money he owes to the lending institution which is presenting him with the option to have insurance in an amount equal to but not more than a maximum aggregate amount plainly stated on the application.

Security argues that the Commissioner in adopting his regulations ignored Act 367; that his regulations are contrary to the express requirements of Act 367 and of Section 618(B)(3) of Act 99; and that Act 540 is not authority for adopting administrative regulations contrary to provisions of other statutes. The Insurance Commissioner says that Act 540 impliedly repealed Act 367, and that Act 540 empowers him to decide what practices are unfair and to forbid such practices enacted earlier statutes allowed. It would overburden this opinion for us to do more than to state our conclusion that Act 540 does not impliedly repeal Acts 367 or 99. We have concluded rather that Act 540 is in pari materia with the earlier Acts and that all of the enactments must be construed together as one statute as the Statutory Construction Act requires. 1 Pa. C.S. §1932. A careful reading of the sections of Act 367 and Act 99 depended on or referred to by Security, and of Act 540, convinces us that there is no irreconcilable inconsistency. Section 6(5) of Act 367, 40 P.S. §532.6(5), provides, with respect to misstatements of age, that policies must contain provisions for an ''equitable adjustment of premiums or of benefits or of both.'' Act 540 does not mention the subject of misstatements of age but it does confer upon the Insurance Commissioner the power to make regulations and to disapprove forms which he may reasonably believe are inequitable. We see no inconsistency in the statutes. Both require an equitable adjustment of premiums or benefits and Act 540 em-

powers the Commissioner to make regulations concerning, and to disapprove, forms which are inequitable.

The question remains of whether the Commissioner's misstatement of age regulation is inconsistent with Act 367, with fatal result to the former. To reiterate, Act 367 says only that the group life policy must contain a provision for equitable adjustments of premiums or benefits, or both. It does not say, as Security seems to argue, that the necessary consequence of a misstatement of age is that the insurance carrier may deny liability for benefits without regard to when a claim is made. Adverting now to the Commissioner's misstatement of age regulation, which, although no model of clarity, we believe it says first, that the carrier may impose an age restriction; second, that the age restriction may not be used as a basis for terminating coverage or denying claims; third, that the insurer may challenge a fraudulent misstatement of age during the contestable period[6]; and fourth, that if an ineligible debtor correctly records his age the insurer must terminate coverage within 60 days from the date of the loan. Both Section 6(5) of Act 367 and Act 540 employ the word equitable with reference to the consequence of misstatement. Act 367 does not say that it is always equitable to deny liability for misstatement of age. Act 540 confers on the Insurance Commissioner the power to disapprove forms containing other than equitable provisions. By amendment to Section 2 of the Act 540 by the Act of December 10, 1974, P.L. 847, the Model Act was made applicable to credit transactions with terms up to 20 years. It seems to us that in the absence of a clear statutory declaration that a claim

---

[6] Which we take to mean the two years provided by Section 6(2) of Act 367, 40 P.S. §532.6(2).

might be denied at any time during the term of the insurance, the provisions of the Insurance Commissioner's regulation that termination or denial may be made within the contestable period of two years and not thereafter is not contrary to the requirement of Act 367 that adjustment must be equitable.

We have difficulty with the Commissioner's aggregate maximum regulation. It says that the insurer's forms may not refer to an aggregate maximum for all indebtedness but that the insurer may establish a maximum for each indebtedness. Section 3(4) of Act 367, 40 P.S. §532.3, most clearly provides that the amount of credit insurance on the life of any debtor shall not exceed the total amount owed or $30,000, whichever is less. It is apparent to us that the $30,000 limitation of Act 367 was not repealed, amended or otherwise affected by Act 540 because it was provided by amendment to Section 3(4) of Act 367 made in 1970, nine years after the adoption of Act 540. The Insurance Commissioner's regulation forbidding forms to refer to an aggregate maximum insurance is hence clearly irreconciliable with Act 367's establishment of an aggregate maximum. Further, as we have noted, Act 540 provides that the initial amount of credit life insurance shall not exceed the total amount repayable under the contract of indebtedness.

We do not understand the Insurance Commissioner to argue that there is anything inequitable in Security's establishing its own aggregate maximum coverage of $15,000. The Department representative who testified at the hearing stated that the inequity lay in the fact that the debtor when applying might not know the amount of all of his borrowing from the lending institution and, when granted new insurance, might think he was fully covered when, because of the maximum, he was not. It would be easy, the Department says, for the lending institution to ascertain the

total of the debtor's indebtedness and to accept insurance for no more than the aggregate maximum. The Commissioner's regulation does not really address itself to the inequity which the representative says it was intended to prevent. The remedy for the practice of writing insurance in amounts in excess of lawful limitations and later denying claims to the extent of such excess, is not to forbid the insurer to inform the insured of such limitation but to impose restrictions on the insurer's power to deny claims, as the Commissioner did with respect to misstatements of age. The regulation on aggregate amounts as it now stands invites the writing of policies or certificates in amounts exceeding the insurer's lawful aggregate maximum and the clear limitation of Act 367.

We therefore:

## ORDER

AND Now, this 19th day of April, 1977, it is Ordered that the appeal of Security of America Life Insurance Company from the Insurance Commissioner's order of April 29, 1976 insofar as that order is based on the Commissioner's misstatement of age regulations found at 31 Pa. Code §73.1(a)(2)(iii) and 31 Pa. Code §73.11(3)(ii), be and the same hereby is dismissed; that Security's appeal from the Commissioner's said order insofar as that order is based on the Commissioner's aggregate maximum regulations to be found at 31 Pa. Code §73.1(c) and at 31 Pa. Code §73.11(6), be and the same hereby is sustained; and that the record be and hereby is remanded to the Insurance Department for action on the part of the Commissioner with respect to Security's forms, which are the subject of this action, consistent with this opinion.